1    **WO**

2

3

4

5

6                **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9   Jesus Belmontes Alvarez,                    No. CV-24-00617-PHX-SMB

10                  Plaintiff,                   **ORDER**

11  v.

12  CSAA General Insurance Company, et al.,

13                  Defendants.

14

15          Pending before the Court is Defendant CSAA General Insurance Company's

16  ("CSAA") Motion for Summary Judgment (the "Motion") (Doc. 14).  The Court has

17  reviewed the Motion, Response (Doc. 18), and Reply (Doc. 21), and will grant the Motion.

18  **I.    BACKGROUND**

19          This case arises from a February 23, 2021 automobile accident involving Plaintiff

20  and a motorist without insurance.  (*See* Doc. 1-1.)  After the accident, Plaintiff submitted

21  an uninsured motorist ("UM") claim to his insurer, CSAA.   (*Id.*; Doc. 15 at 3 ¶ 4.)

22  Plaintiff's insurance policy (the "Policy") provided UM coverage for five vehicles, with

23  limits of $100,000 per person and $300,000 per accident for each vehicle.  (Doc. 15 at 2

24  ¶ 1; Doc. 15-1 at 2, 4.)

25          Plaintiff, through his attorney at Rack Law, made the UM claim with CSAA on

26  February 26, 2021.  (Doc. 19 at 7 ¶ 7; Doc. 19-5 at 1.)  Around March 15, 2021, CSAA

27  received a letter of representation from Rack Law.  (Doc. 15 at 3 ¶ 6; Doc. 19 at 2 ¶ 6.)  As

28  Plaintiff's agent, Rack Law had the authority to negotiate a settlement with CSAA for the

UM claim.  (Doc. 15 at 3 ¶ 8.)  Around April 1, 2022, Rack Law sent a demand letter (the "Demand Letter") and a "HOLD HARMLESS AGREEMENT" to CSAA asking that CSAA pay Plaintiff over $195,000 for medical expenses.  (*Id.* at 3–5 ¶¶ 11, 18; *see also* Doc. 19 at 3 ¶ 11.)  The demand letter also noted that the $195,000 "is not inclusive of all care.  [Rack Law] submit[s] the demand at the present, knowing there is only $100,000 in coverage, and the claim, as presented, significantly exceeds said amount."  (*Id.* at 3–5 ¶¶ 11, 18; *see also* Doc. 19 at 3 ¶ 11.)  Rack Law represented that the Demand Letter's purpose was to facilitate a settlement agreement and, if settlement were to be reached, Plaintiff must have the check in hand by April 15, 2022.  (Doc. 15 at 4 ¶ 13–14.)  If settlement was reached pursuant to Plaintiff's terms, then Plaintiff would release "any and all claims" and "satisfy all liens" against CSAA.  (*Id.* at 4–5 ¶¶ 15–16.)

On April 12, 2022, CSAA responded to the Demand Letter as follows:

> The purpose of this letter is to extend our offer of $100,000 in settlement of your client's claim. Please note that this offer constitutes a policy limits tender for uninsured motorist bodily injury coverage and the settlement check along with the release has been sent to your office under a separate cover. Please communicate my offer to your client at your earliest convenience. I look forward to concluding this matter in the near future.

(Doc. 15-5 at 2.)  CSAA also sent a $100,000 check for Plaintiff to Rack Law.  (Doc. 15 at 5 ¶ 20.)  In the comment section of the check, CSAA wrote that the money represented "Full and Final Settlement for Uninsured Motorist Bodily Injury, Inclusive of Any and All Liens, Both Known and Unknown."  (*Id.* at 5–6 ¶ 21.)  The back of the check stated: "Endorsement constitutes acceptance of the Offer of Payment."  (*Id.* at 6 ¶ 22.)  Alongside the check, CSAA sent a "Release of Uninsured Motorist Coverage."  (*Id.* ¶ 23.)  Plaintiff's counsel received CSAA's check on April 20, 2022.  (Doc. 19 at 6 ¶ 2.)  The parties negotiated the settlement check on April 22, 2022, which Plaintiff later accepted.  (*See* Doc. 15 at 6 ¶ 24.)  On May 5, 2022, CSAA followed up with Rack Law on the status of the release form for Plaintiff's claims.  (Doc. 19-7.)  No response is on the record.

On July 28, 2023, nearly fifteen months after the parties negotiated the settlement, the Arizona Supreme Court decided *Franklin v. CSAA General Insurance*, 532 P.3d 1145 (Ariz. 2023), addressing the stacking of underinsured motorist coverage ("UIM").  On

August 25, 2023, Plaintiff, relying on the holding in *Franklin*, demanded CSAA pay additional UM coverage benefits under the Policy.  (Doc. 15 at 6 ¶ 27.)  CSAA declined to pay.  (*Id.* ¶ 28.)  So, Plaintiff filed suit in the Maricopa County Superior Court (Doc. 1-1), leading CSAA to remove the case to this Court.  (Doc. 1.)  The parties filed a Joint Case Management Report signifying their intent to move for summary judgment to resolve the matter prior to discovery.  (Doc. 11 at 5–6.)  CSAA's Motion followed (Doc. 14), which the Court now considers.

## II.    LEGAL STANDARD

Summary judgment is appropriate in circumstances where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of a case under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes are genuine when the evidence could allow a reasonable jury to find in favor of the nonmoving party.  *Id.*  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)–(B).  Additionally, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court must draw all reasonable inferences in the nonmovant's favor.  *Anderson*, 477 U.S. at 255.  Additionally, the Court does not make credibility determinations or weigh the evidence.  *Id.* at 253.  The determination of whether a given factual dispute requires submission to a jury is guided by the substantive evidentiary standards that apply to the case.  *Id.* at 255.

The burden initially falls with the movant to demonstrate the basis for a motion for

summary judgment, and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  If this initial burden is not met, the nonmovant does not need to produce anything even if they would have the ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).  However, if the initial burden is met by the movant, then the nonmovant has a burden to establish that there is a genuine issue of material fact. *Id.* at 1103.  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Zenith Radio Corp.*, 475 U.S. at 586.  Bare assertions alone do not create a material issue of fact, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 247–50 (citations omitted).

## III.    DISCUSSION

CSAA argues that summary judgment is appropriate because the parties entered into a valid settlement agreement, or affected a valid accord and satisfaction, thereby barring Plaintiff's claims. (Doc. 14 at 6–8, 9–16.)  In response, Plaintiff denies the existence of an enforceable settlement agreement or accord and satisfaction. (Doc. 18.)  Additionally, Plaintiff requests relief under Federal Rule of Civil Procedure 56(d). (Doc. 18.)

### A. Rule 56(d) Relief

Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).  Rule 56(d) creates "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).  "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists and that it would prevent summary judgment." *Okabayashi v. Travelers Home & Marine Ins. Co.*, No. CV-17-03612-PHX-DJH, 2019 WL 1059982, at *3 (D. Ariz. Mar. 6, 2019) (citing

*Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)).  The moving party must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Thus, a party requesting relief must "make clear what information is sought and how it would preclude summary judgment." *Nicholas v. Wallenstein*, 266 F.3d 1083, 1088–89 (9th Cir. 2001). "Failure to comply with these requirements 'is a proper ground for denying discovery and proceeding to summary judgment.'" *Family Home & Fin. Ctr.*, 525 F.3d at 827 (quoting *Campbell*, 138 F.3d at 779).

Plaintiff asks this Court to deny the Motion without prejudice so that he may engage in discovery to obtain a full copy of the insurance policy to support his stacking and bad faith claims.  (*See* Doc. 18 at 3.)  In turn, CSAA argues that the parties' intended to file early motions for summary judgment and delay discovery.  (Doc. 21 at 13–14; *see also* Doc. 11.)

Plaintiff's request for Rule 56(d) relief is disingenuous and waived based on his representations in the Joint Case Management Report.  (*See, e.g.*, Doc. 11 at 5–6.)  The parties agreed to delay discovery as they "anticipate[d] the matter may be resolved by early cross-motions for summary judgment" because "[t]he parties generally agree on the material facts but disagree as to the application of the law to those facts." (*Id.*)  At the Case Management Conference on May 24, 2024, Plaintiff's counsel agreed that no scheduling order should issue until the Court ruled on their anticipated motions for summary judgment. (*See* Doc. 12.)  Thus, the parties agreed that no discovery orders would issue until the Court resolved the forthcoming motions.  Additionally, CSAA's pending Motion concerns the parties' understanding of the Policy at the time of settlement, not whether stacking is allowed under *Franklin*.  Even without discovering the Policy, Plaintiff understood that the Policy insured five vehicles and provided UM coverage for $100,000 per individual for each vehicle.  So, Plaintiff could have made a stacking argument when the parties

negotiated the settlement, but instead, given the unclarity in the law, Plaintiff decided to settle for $100,000. For the foregoing reasons, Plaintiff's request for Rule 56(d) relief is denied.

## B. The Parties' Settlement Agreement

Courts are empowered to enforce valid, complete settlement agreements. *F.D.I.C. v. Nova Fin. and Inv. Corp.*, No. CV-15-00855-PHX-GMS, 2017 WL 956095, at *2 (D. Ariz. Jan. 10, 2017). "Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Whether the parties entered into an enforceable settlement agreement is a question of state law. *See Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014).

Arizona constructs and enforces settlement agreements under general contract principles. *Emmons v. Superior Court*, 968 P.2d 582, 585 (Ariz. Ct. App. 1998). "A valid contract in Arizona consists of 'an offer, acceptance, consideration, and sufficient specification of terms so that obligations can be ascertained.'" *F.D.I.C.*, 2017 WL 956095, at *2 (quoting *K-Line Builders v. First Fed. Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983)). "It is well-established that before a binding contract is formed, the parties must mutually consent to all material terms. Mutual assent is determined based on objective evidence, not the hidden intent of the parties." *Id.* (cleaned up).

CSAA argues that Plaintiff's acceptance of the check after the April 22, 2022 negotiations constituted a valid, enforceable settlement agreement that bars Plaintiff's claims. (Doc. 14 at 8.) In response, Plaintiff contends that no valid settlement exists because CSAA failed to comply with the time requirements in the Demand Letter, the settlement check violates the Arizona Administrative Code ("A.A.C."), and that there is no copy of the executed release of claims form on record. (Doc. 18 at 9.)

According to Plaintiff, the Demand Letter required "strict compliance" with the clause stating that "[Plaintiff] hereby demand[s] the policy limit and expect settlement with check in hand by April 15, 2022." (Doc. 15-3 at 6.) Although the clause does not use any

prescribing language such as "CSAA *must*" provide the check by April 15, nor does it state that "time is of the essence." (*See id.*)  Instead, the Demand Letter merely expressed Plaintiff's expectation that a check be in hand by April 15.  *Cf. BMW of N. Am., LLC v. Mini Works, LLC*, 166 F. Supp. 3d 976, 982 (D. Ariz. 2010) (holding that a letter requesting defendant to "return the acknowledgement . . . by June 21, 2007" was a suggestion and not a demand that defendant meet the deadline).  Moreover, the effect of the clause is not changed by the Demand Letter stating: "[I]f the claim is not resolved by our deadline, we will file suit." (Doc. 15-3 at 5.)  It is undisputed that CSAA wrote Plaintiff on April 12 assenting to the terms of the Demand Letter, thereby "resolving" the claim. (Doc. 15 ¶ 19.)  At bottom, the Demand Letter required strict compliance with the demand to pay the policy limit, but otherwise only expected the check to arrive by April 15.

Even if the Demand Letter required strict compliance, Plaintiff's counsel either waived non-compliance, or the late settlement check served as a counteroffer, which Plaintiff accepted.  *See BMW of N. Am., LLC*, 166 F. Supp. 3d at 982; *see* Restatement (Second) of Contracts § 70 ("A late or otherwise defective acceptance may be effective as an offer to the original offeror.").  The check noticed the instrument as the full and final settlement of Plaintiff's claims and that endorsement would constitute acceptance of the offer. (Doc. 15 at 5–6 ¶¶ 21–22.)  Therefore, Plaintiff's acceptance of the check would constitute a separate settlement of the Plaintiff's UM claim irrespective of compliance with the terms of the Demand Letter.

Plaintiff's argument that CSAA did not believe it had settled the claim is also unavailing.  Plaintiff claims that because CSAA's counsel "request[ed] an executed copy of the proposed Release on 05/16/22," the insurer did not believe any settlement had been reached. (Doc. 19 at 7.)  However, CSAA's attorney averred that he "considered [Plaintiff's] UM Claim fully settled and satisfied as of April 2022," after the check was negotiated and accepted. (Doc. 15-10 at 3 ¶ 8.)  To the extent that Plaintiff attempts to conjure a dispute of fact regarding CSAA's subjective belief of settlement, such dispute would not be genuine.  *Donges v. USAA Fed. Savings Bank*, 391 F. Supp. 3d 907, 910 (D.

Ariz. 2019) ("A factual dispute is genuine if the evidence is such that a reasonable trier of fact could resolve the dispute in favor of the nonmoving party.")  Indeed, based on the proffered evidence, CSAA's attorney was executing his duty to retrieve an executed copy of the release forms after Plaintiff had accepted the $100,000.  Here, no rational person would believe that CSAA gave Plaintiff a $100,000 check signifying the full and final release of any claims against it while simultaneously believing a settlement had not been reached.  *See id.*

Finally, Plaintiff's argument that the check did not comply with A.A.C. § 20-6-801(D)(6) fails.  That statute requires insurers to avoid "[m]isrepresentation of policy provisions," and provides that "[n]o insurer shall issue checks . . . in partial settlement . . . which contain language that releases the insurer or its insured from its total liability."  A.A.C. § 20-6-801(D)(6).  At the time the check was tendered, no clear answer existed in Arizona law concerning the ability of an insured to stack his policy coverages. *See Franklin*, 532 P.3d at 1148, 1150; *accord Franklin v. CSAA Gen. Ins. Co.*, No. CV-22-00540-PHX-JJT, 2022 WL 16631090, at *2 (D. Ariz. Nov. 2, 2022) (certifying the question to the Arizona Supreme Court).  Therefore, CSAA's tender of the $100,000 as representative of the limits under Plaintiff's Policy would not automatically amount to a violative misrepresentation.  And no evidence exists on the record to show that CSAA did misrepresent the terms of the Policy.  Additionally, Plaintiff had the option to reject the check and file a lawsuit, but instead opted to negotiate and accept the $100,000.  Therefore, the complained of noncompliance with the A.A.C. as it relates to the 2022 settlement check lacks merit.

In sum, there is no material dispute that the parties negotiated a check for $100,000 to satisfy all of Plaintiff's claims.  Therefore, given that the parties have settled the claim, summary judgment is appropriate against Plaintiff's Complaint (Doc. 1-1) and for CSAA's Counterclaim (Doc. 1-9).

**C. Accord and Satisfaction**

CSAA argues that both Arizona Revised Statute ("A.R.S.") § 47-3311 and Arizona

common law show that the parties' resolved Plaintiff's UM claim through an accord and satisfaction. (Doc. 14 at 9–10.) In response, Plaintiff argues that accord and satisfaction could not occur because CSAA misrepresented the UM limits under the Policy in violation of A.A.C. § 20-6-801(D)(1), (D)(6). (Doc. 18 at 10 (citing *Abbott v. Banner Health Network*, 372 P.3d 933, 937 (Ariz. 2016).)

> 1. A.R.S. § 47-3311

Section 47-3311 provides in relevant part:

> A. If a person against whom a claim is asserted proves that the person in good faith tendered an instrument to the claimant as full satisfaction of the claim, the amount of the claim was unliquidated or subject to a bona fide dispute and the claimant obtained payment of the instrument, subsections B and C apply.
>
> B. Unless subsection C applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.[1]

CSAA argues it complied with the statutory requirements of accord and satisfaction. First, CSAA tendered, in good faith, an instrument in full satisfaction of Plaintiff's claim, which Plaintiff thereafter accepted to resolve his $100,000 UM claim. (Doc. 14 at 9.) Alternatively, CSAA tendered the check as a counter-offer to the Demand Letter, which Plaintiff accepted. Next, there was a bona fide dispute: the Demand Letter stated that it was sent as a "compromise offer" to "reach a settlement short of litigation." (*See id.*) Finally, Plaintiff obtained payment of the instrument when his counsel negotiated the $100,000 check. (*Id.*); *see also* A.R.S. § 47-3311(D) ("A claim is discharged if the person against whom the claim is asserted proves . . . the claimant, or an agent of the claimant, . . . knew that the instrument was tendered in full satisfaction of the claim.").

In response, Plaintiff argues accord and satisfaction did not occur because CSAA acted in bad faith and violated A.A.C. § 20-6-801(D). (Doc. 18 at 10.) Section 20-6-801(D)(1) and (2) of the A.A.C. provide that "[n]o insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance

---

[1] Section C sets forth two exceptions that do not apply to the facts of this case. *See* § 47-3311.

policy or insurance contract under which a claim is presented" and "[n]o agent shall conceal from first party claimants benefits, coverages or other provisions of any insurance policy or insurance contract when the benefits, coverages or other provisions are pertinent to a claim." Further, A.A.C. § 20-6-801(D)(6) provides "[n]o insurer shall issue checks or drafts in partial settlement of a loss or claim under a specific coverage which contain language that releases the insurer or its insured from its total liability."

Though the A.A.C. invariably applies, it does not help Plaintiff's case. Here, Plaintiff premises his argument on the unsupported narrative that CSAA misrepresented the Policy's limits. (*See* Doc. 18.) The Court cannot ignore that at the time Plaintiff and CSAA resolved his claim, the viability of stacking was unresolved. Indeed, until the Arizona Supreme Court decided *Franklin*, there was no binding precedent on the validity of intra-policy stacking. *See Franklin*, 2022 WL 16631090, at *2. And, while deciding the issue, Arizona Supreme Court recognized and resolved patent ambiguities in A.R.S. § 20-259.01(H) regarding stacking. *See Franklin*, 532 P.3d at 1148, 1150. So, because the law was unclear in 2022, CSAA's failure to disclose the availability of stacking under the policy does not, without more evidence, equate to bad faith. For this reason, the Court agrees with CSAA. It tendered payment in good faith to settle a bona fide dispute, and Plaintiff received and accepted the payment. Therefore, the parties executed a valid accord and satisfaction under § 47-3311, which settled Plaintiff's claim.

## 2. The Common Law

Under the common law, a person against whom a claim is asserted has the burden to prove four elements for accord and satisfaction: (1) proper subject matter; (2) competent parties; (3) assent or meeting of the minds of the parties; and (4) consideration. *Abbot*, 372 P.3d at 937.

### i. *Proper Subject Matter*

"An accord and satisfaction has proper subject matter unless it is founded on a contract that violates statues or is contrary to public policy." *Abbott*, 372 P.3d at 937 (citing *1800 Ocotillo, LLC v. WLB Grp., Inc.*, 196 P.2d 222, 202 (Ariz. 2008)).

Plaintiff argues that this element fails as a matter of law because the check violates the A.C.C. (Doc. 18 at 10.) For the reasons discussed above, the Court does not agree with Plaintiff. Now, regarding the subject matter, Arizona's Underinsured/Uninsured Motorist Act governs the Policy providing Plaintiff with UM coverage. *See* A.R.S. § 20-259.01. Further, Arizona courts treat the settlement of these types of claims as "an ordinary contract," and thus the check, acting as the contract to settle the claims under the Policy, satisfies the proper subject matter element. *See Emps. Mut. Cas. Co. v. McKeon*, 821 P.2d 766, 770 (Ariz. Ct. App. 1991).

### ii.    Competent Parties

Where the partes agents have authority to bind them in a settlement, the "competent parties" element is met. *Best Choice Fund, LLC v. Low & Childers, P.C.*, 269 P.3d 678, 686–87 (Ariz. Ct. App. 2011). Under Arizona law, "[a]ctual authority includes both express authority outlined in specific language, and implied authority when the agent acts consistently with the agent's reasonable interpretation of the principal's manifestation in light of the principal's objective and other facts known to the agent." *Id.* at 687 (internal quotation marks omitted).

Plaintiff does not contest that his attorneys were competent and had the authority to bind him. (Doc. 18 at 11.) Although, Plaintiff contends that there is no indication he was bound by an enforceable settlement agreement because CSAA either materially misrepresented, or made a mutual mistake, in concluding that the UM coverage was only $100,000. (*Id.*) Again, Plaintiff's argument is based on the unsupported premise that CSAA affirmatively misrepresented the terms and limits of the Policy. Additionally, Plaintiff does not adduce any evidence or legal support for its contention that CSAA's offer to settle Plaintiff's UM claim, in light of the then-existing ambiguities in the law, was a "mutual mistake" that would render settlement or accord and satisfaction ineffective. (*See id.*)

Here, there is no dispute that Rack Law had the authority to, and in fact did, negotiate and settle Plaintiff's UM claim. Additionally, there is no dispute that CSAA's

claims adjuster had authority to settle the claim.  Therefore, the competent parties element is met.

### iii.    Assent or Meeting of the Minds

Before a contract is formed, the parties must "mutually consent to all material terms." *Hill-Shafer P'ship v. Chilson Fam. Tr.*, 799 P.2d 810, 814 (Ariz. 1990).  In situations like these, "a check marked with words such as 'full payment' or 'account in full' will not result in an accord and satisfaction unless it is clear which claims or accounts are intended to be covered."  *Mobilife Corp. v. Delta Inv. Corp.*, 592 P.2d 782, 785 (Ariz. Ct. App. 1979); *see also Med-Fibers Eur. GmbH v. Med-Fibers Inc.*, CV-19-04962-PHX-DJH, 2021 WL 3773768, at *3 (D. Ariz. Aug. 25, 2021) ("[A]ssent or meeting of the minds[] may be inferred from a party's acceptance of funds." (citing *Frank Culver Elec., Inc. v. Jorgenson*, 664 P.2d 226, 227 (Ariz. Ct. App. 1983))).

Plaintiff argues that if he believed he was "compromising his claim for the full UM limits," and CSAA believed it was "resolving the UM claim for less than the full limits," then the parties clearly did not have a meeting of the minds.  (Doc. 18 at 11.)  Here, Plaintiff's argument seems to be that CSAA understood that it was settling Plaintiff's claim for less than the Policy allowed.  Not so.  Both the Demand Letter and the check signified that the Policy provided $100,000 in UM coverage and each document indicated that the transaction was meant to satisfy and discharge Plaintiff's claim.  Again, Plaintiff attempts to support a conspiracy that CSAA knew it was misrepresenting the Policy's limits without any evidentiary support.  Nothing on record detracts the fact that both parties understood the terms of the settlement, agreed to those terms, and executed it.  *See Med-Fibers Eur. GmbH*, 2021 WL 3773768, at *3.

### iv.    Consideration

Arizona courts "presume written promises are supported by consideration."  *Best Choice*, 269 P.3d at 689 (citing A.R.S. § 44-121 ("Every contract in writing imports a consideration.")).  When a contract "contains mutual promises and is in writing," consideration will almost always be adequate.  *Id.*; *Abbott*, 372 P.3d at 937 ("The

settlement of a bona fide dispute provides consideration if it is made fairly and in good faith.").

There is seemingly no dispute regarding consideration. (*See* Doc. 14; Doc. 18.) To the extent that such a dispute exists, the parties' execution of the Check as an instrument signifying the full payment of Plaintiff's claims under the Policy, and lack of evidence showing CSAA acted in bad faith, satisfies the consideration requirement.

At bottom, CSAA has satisfied its burden to show the elements of a valid accord and satisfaction under both statute and a common law. Therefore, the Court will grant summary judgment against Plaintiff on this ground.

**D. Bad Faith and Punitive Damages**

An insurer commits the tort of bad faith by intentionally and without reasonable basis denying, failing to process, or failing to pay a claim. *Noble v. National Am. Life Ins.*, 624 P.2d 866, 868 (Ariz. 1981). To show bad faith by the insurer, the insured must show: (1) that the insurer acted unreasonably toward the insured; and (2) that the insurer "acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it." *Trus Joist Corp. v. Safeco Ins.*, 735 P.2d 125, 134 (Ariz. Ct. App. 1986).

Plaintiff argues that CSAA acted in bad faith by failing to disclose applicable coverage, violating multiple Arizona statutes, and thus failed to pay all UM limits to which Plaintiff is entitled under the Policy. (Doc. 18 at 12.) As discussed, the record lacks evidence that CSAA failed to disclose applicable coverage, violated Arizona law under the circumstances surrounding the settlement, or that it failed to pay the $100,000 UM limit. Again, Plaintiff's argument is based upon a false premise that CSAA misrepresented the Policy. At the time the Check was executed, there was no clear answer under Arizona law regarding stacking. Only after *Franklin* did the availability of stacking become clear. *See Franklin*, 532 P.3d at 1148, 1150. When the settlement occurred, Plaintiff's counsel was free to advance a stacking argument or claim but failed to do so. As it stands, the only evidence Plaintiff offers to support its bad faith claim is conjecture and speculation about

what he believes CSAA did. This is not enough to defeat summary judgment considering uncontroverted evidence to the contrary showing that the parties either executed a settlement or settled the claim by accord and satisfaction. Therefore, the Court will grant summary judgment against Plaintiff's bad faith claim.

"[T]o obtain punitive damages, plaintiff must prove that defendant's evil hand was guided by an evil mind. The evil mind which will justify the imposition of punitive damages may be manifested in either of two ways. It may be found where defendant intended to injure the plaintiff. It may also be found where, although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Burton v. United Servs. Auto. Ass'n*, No. CV-22-00837-PHX-DWL, 2023 WL 5507829, at *9 (D. Ariz. Aug. 25, 2023) (quoting *Farr v. Transamerica Occidental Life Ins. Co. of Cal.*, 699 P.2d 376, 384 (Ariz. Ct. App. 1984)).

If a party fails to sustain a claim for an underlying tort, a claim for punitive damages will not stand. *Burton*, 2023 WL 5507829, at 9 ("Under Arizona law, [t]here is no such thing as a cause of action simply for punitive damages. Rather, the right to an award of punitive damages must be grounded upon a cause of action for actual damages." (internal quotation marks omitted)). Because Plaintiff's bad faith claim fails, his punitive damages claim must also fail. Therefore, the Court will grant summary judgment against Plaintiff's claim for punitive damages.

**IV.    CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** granting Defendant CSAA General Insurance Company's Motion for Summary Judgement (Doc. 14).

…

…

…

…

1

2        **IT IS FURTHER ORDERED** instructing the Clerk of Court to enter judgment

3  consistent with this Order and terminate this case.

4        Dated this 4th day of February, 2025.

5

6

7                                    Honorable Susan M. Brnovich
                                     United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28